IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-152 (TSC) |
| : | The Hon. Tanya S. Chutkan |
| JOSHUA LOLLAR, : | Sent. Date: May 22, 2023 |
| : | |
| Defendant. : | |
| : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The defendant, JOSHUA LOLLAR, by and through his undersigned counsel, Brian K. McDaniel, respectfully represents that he has reviewed the Pre-sentence Report (PSR) and, in accordance with 18 U.S.C. § 3553(a) and the remedial scheme set forth in *United States v. Booker*, 125 S.Ct. 738(2005), and *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), presents this Brief and Position of the Defendant with Respect to Sentencing Factors to aid the Court in determining an appropriate sentence.

On May 22, 2023 Mr. Lollar is scheduled to appear before this court wherein he intends to enter a plea of guilt to Count Three of the Indictment charging him with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2. This Court is well aware of the actions which will have led to Mr. Lollar's conviction and the resulting exposure which he now faces.

On January 6, 2021 Mr. Lollar attended the "Stop the Steal" rally which had been organized in a political effort to challenge the presidential election which had resulted in political turmoil that had divided the country. In Mr. Lollar's fervor, he wrongfully and unlawfully made entry into the United States Capitol Building along with other persons who participated in the effort. Once in the Rotunda, Mr. Lollar was in the front line of

protestors who came in to close contact with capitol police and other law enforcement officers who were trying to then clear the rotunda of the protestors. Mr. Lollar recognizes the serious nature of the offense to which he will plead guilty. He feels deep remorse and pervasive shame for the conduct that has brought him before the Court and understands that he must now make amends to society, his family and the country.

To this end, Mr. Lollar will accept responsibility for his actions through a prompt plea which will spare the Government the need to prepare for and participate in a trial. Mr. Lollar will also appear before the Court to be sentenced. Mr. Lollar does not dispute that his crime warrants some form of punishment. The central issue before the Court, then, is what is the appropriate sentence for Mr. Lollar – what sentencing elements would be "sufficient but not greater than necessary" to satisfy the purposes of federal sentencing in the circumstances of this unique case. See 18 U.S.C. § 3553(a). Mr. Lollar respectfully submits that a home confinement sentence with the payment of $2,000.00 in restitution would satisfy the §3553 criteria in this case. In support of this sentencing recommendation, Mr. Lollar asks the Court to consider that: (1) he does not have an extensive criminal history and stands before the court in Criminal History Category I; (2) he has otherwise conducted his life respectably, having been part of a strong family unit and having served this country while a member of the Army from 2001 to 2007 when he was honorably discharged and; (3) the proposed sentence would allow Mr. Lollar to continue to address his mental health diagnosis outlined in the presentence report and as further discussed below.

I.      **The Advisory Sentencing Range**

Mr. Lollar does not dispute the U.S.S.G. calculations as they have been outlined in the PSR at pg. 18 paragraph 82. He agrees that USSG §2J1.2(a) identifies a base offense level of 14. Mr. Lollar asks that this court not to assess an additional eight level increase pursuant to U.S.S.G § 2J1.2(b)(1)(B) as it was not his intent to have any physical contact with the law enforcement officers who were present, and that the contact which he engaged in is not the sort which should implicate this enhancement. Mr. Lollar also agrees that pursuant to USSG § 2J1.2(b)(2), a three level increase is also appropriate. The Government has agreed that, pursuant to §3E1.1(a), Mr. Lollar has accepted responsibility and should receive a three level decrease in his offense level. Additionally, the PSR at pages 10-12 has identified that Mr. Lollar has only one criminal history point stemming from a 2016 conviction for False Information on a vehicle in Montgomery County Texas. As a result Mr. Lollar is in criminal history category I. If the court should agree with the Defense and determine that the eight level increase is not appropriate pursunt to U.S.S.G § 2J1.2(b)(1)(B) the resulting offense level would be 14 with an attending guideline range of 15 to 21 months. Should the Court determine the increase should be applied, the resulting offense level would be 22 with a guideling range of 41 to 51 months of incarceration.

## II.     The Other § 3553 Factors

In the post-Booker era, the sentencing court's duty is to consider all the factors identified in 18 U.S.C. §3553(a) and impose a sentence sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in the statute. Those four purposes are the need for the sentence imposed to:  (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment: (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant;

and (4) provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, §3553 requires the sentencing court to consider the following factors (in addition to the advisory Guidelines range and any pertinent policy statements issued by the Sentencing Commission) in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). 18 U.S.C. § 3553 (a)(1)-(7). For the reasons that follow, we submit that these purposes and factors support the probationary sentence which is requested by the Defense.

    A.    *The nature and Circumstances of Mr. Lollar's Offense*

The events of January 6, 2021 were obviously troublesome. Many came to the Nation's Capital with dangerous intentions to frustruate the certification of the election and to overturn a lawfully and fairly conducted election. However, there were different degrees of commitment to these efforts which was evidenced by those who participated in the demonstrations. While it is true that Mr. Lollar was present on the grounds of the Capital outfitted with some protective gear, he has represented that he was wearing the same to avoid any harm which he might realize in any interaction which might result from confrontations with counter-protestors and to avoid any negative effects from any spray or rubber bullets which might be employed by law enforcement. While the Government has asserted that Mr. Lollars conduct was indicative of someone who intended to participate in physical conflict with officers, the representations of Mr. Lollar immediately following his alighting from the Capitol Building undermine this position. In a social media post

4

immediately after his interaction with law enforcement, he commented "Just got gassed and fought with cops that I never thought would happen". This along with a careful review of the video capturing the true nature of the interaction between Mr. Lollar and the police reveals that the physical contact appeared to be nothing more that a theatrical shoving match between Mr. Lollar and the officers by whom he was confronted. This interction is remarkable for what it is that Mr. Lollar did not do; he did not throw a punch or in any way try to strike any of the officers, he did not deploy any OC spray, he did not press his way past any of the Officers who had formed a line. Indeed Mr. Lollar did not even forcibly make his way into the capitol having entered the same when officers at certain locations were passively allowing protestors to come into the edifice. In fact the govenement has acknowledged that some of the officers present were taking pictures with some of the protestors and were allowing peaceable entry into the capital. Neither did Mr. Lollar go to either the Senater or House floor, remaining in the building for only 30 minutes.  Mr. Lollar, like many of those who were called to the District by former President Trump and his supporters were the unfortunate pawns used to advance the lofty and illegal political goals of those desperately hoping to hold on to power. This on the backs of those who had been indoctrinated with false information. Mr. Lollar's love for country, evidenced by  his military service, was abused and now he will be called upon to accept his punishment while those who are responsible for the orchestration of this event, in large part, have and apparently will avoid any level of accountability. Counsel advances that this result is unfair and unjust. Considering the full body of Mr. Lollar's actions and inactions the defense submits that  the eight point offense level is inappropriate and that this court should order the home confinement sentence.

B. *The History and Characteristics of Mr. Lollar.*

The history and characteristics of Mr. Lollar support the sentence that the defense implores this Court to adopt. He appears before this Court as the product of a loving and supportive family. He is well educated and as has been noted, has not had extensive contact with the criminal justice system. He can only hope that this Court will allow him an opportunity to prove that he has learned from this experience while being positioned to continue to make the progress that he has made since the commission of the underlying offense and while this matter has been pending. Mr. Lollar has done well while on release and has not violated his conditions in any material way. With the exception of one failure to participate in a mental health screening, Mr. Lollar has done all this court has asked him to do while on release. This to include, as this court is aware, a harrowing trip for a mental health screening coordinated by the Marshal's service to which Mr. Lollar voluntarily submitted. This occurring in the context of Mr. Lollar's preexisting mental health concerns including a TBI and PTSD diagnoisis.

This criminal case and its many consequences have taught Mr. Lollar a difficult lesson. There can be no justification for taking advantage of the public trust, even if one believes that his ultimate goal will be of great benefit to the same public. Mr. Lollar knows that the burden is on him to prove to the Court, his family and the nation that he is worthy of a second chance.

In sum, as the Court deliberates over the appropriate sentence in this case, Mr. Lollar asks that it consider his sincere remorse for his crime, his commitment to make full restitution to his victims, and his recent efforts to return his life to a productive and law-abiding path. We respectfully submit that these considerations, and the entirety of Mr.

Lollar's history and personal characteristics, weigh in favor of the home confinement sentence that has been proposed.

      C.     *The Need to Provide Restitution to Any Victims*

Mr. Lollar is eager to repay all those who were impacted by this crime. He has agreed to pay the restitution amount of $2,000.00 in connection with his plea of guilt.

      D.     *The Purpose of Federal Sentencing*

As noted at the outset, Congress has identified four purposes of federal sentencing that must guide district courts in selecting a sentence within the statutory penalty range. The sentence must be "sufficient, but not greater than necessary" to serve those purposes. With these guideposts in mind, Mr. Lollar respectfully asks the Court to impose a period of home confinement.

The first purpose of federal sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." As discussed above, Mr. Lollar understands that he will plead guilty to a serious offense that resulted in real harm to the community. He is ashamed of his conduct. He respectfully submits that the sentence proposed by the defense in light of his limited conduct, provides "just punishment" for his offense.

The second purpose of federal sentencing is "to afford adequate deterrence to criminal conduct." The conviction and its attending sentence will send a clear message of deterrence to any one who might consider similar conduct in the future. We respectfully submit that the proposed sentence is "sufficient but not greater than necessary" to serve the purpose of general deterrence.

The third purpose of federal sentencing is " to protect the public from further crimes of the defendant." Mr. Lollar is as deterred from criminal activity as he could possibly be. He is embarrassed and has a new appreciation for the rule of law. There is no reason to believe that Mr. Lollar would represent any level of danger to the public.

In conclusion, Mr. Lollar stands before the Court with deep remorse. He made a serious mistake that will have permanent consequences for him. In imposing sentence, Mr. Lollar asks the Court to consider his positive contributions to his community over the years, the aberrational nature of his criminal conduct, and the steps he has recently taken to return his life to a productive and law-abiding path. In these circumstances, we respectfully submit that a  home confinement sentence and full restitution is fully consistent with the Court's statutory mandate to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing.

Respectfully Submitted,

/s/Brian K. McDaniel
Brian K. McDaniel, Esq.
The McDaniel Law Group, PLLC
1001 L. Street SE
Washington, D.C. 20003
Telephone (202) 331 – 0793

*Counsel for Joshua Lollar*